## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TIMOTHY HATTEN,                      :
                                     :
            Petitioner,              :     CIVIL NO. 1:11-CV-2396
                                     :
      v.                             :     (CALDWELL, D.J.)
                                     :
                                     :     (CARLSON, M.J.)
BRYAN A. BLEDSOE,                    :
                                     :
                                     :
            Respondent.              :

## REPORT AND RECOMMENDATION

On December 30, 2011, the petitioner, an inmate incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (Doc. 1.) For the following reasons, the court recommends that the petition be **DENIED**.

## I.     Background

The petitioner's habeas petition challenged a series of disciplinary proceedings and alleged numerous due process violations which arose out of five separate incident reports which involved the petitioner, each of which entailed violent, destructive or threatening conduct. (Doc. 1.) The first incident, Report No. 1823778, occurred on January 20, 2009, at the United States Penitentiary in Florence, Colorado ("USP Florence") and resulted in the petitioner being found guilty of the Bureau of Prisons ("BOP") Offense Code 329, Destroying Property Less Than $100, and Offense Code 307, Refusing to Obey an Order. (Doc. 13, pp. 80-97.) The second incident, Report No. 2177122, occurred on June 22, 2011 at USP Lewisburg and resulted in the

petitioner being found guilty of Offense Code 203, Threatening. (Doc. 12, pp. 34-45.) The third incident, Report No. 2186134, occurred on May 1, 2011, but was not discovered until July 15, 2011, at USP Lewisburg and resulted in the petitioner being found guilty of Offense Code 203, Threatening. (Id., pp. 46-58.) The fourth incident, Report No. 2186530, occurred on July 16, 2011, at USP Lewisburg and resulted in the petitioner being found guilty of Offense Code 298, most like Assault, Code 224. (Doc. 13, pp. 59-68.) The fifth incident, Report No. 2189889, occurred on July 25, 2011, at USP Lewisburg and resulted in the petitioner being found guilty of Offense Code 203, Threatening. Id., pp. 70-78.

On March 26, 2012, the court directed the respondent to show cause why habeas relief should not be granted. (Doc. 6.) After an extension of time, the respondent filed his response on April 19, 2012, (Doc. 10.), which principally argued that the instant petition should be denied because the petitioner: (1) failed to exhaust his administrative remedies related to Incident Report Nos. 2177122 and 2186124; and (2) the Disciplinary Hearing Officer's ("DHO") findings met evidentiary and due process requirements in the petitioner's five disciplinary hearings. Id. On June 13, 2012, the petitioner filed a document titled, "Petitioner's Traverse Petition Of Opposition To Respondent Erroneous Response Entered (Doc.# 18)". (Doc. 26.) The petition is, therefore, ripe for disposition.

Because we find that Hatten on occasion failed to properly exhaust his administrative remedies, further find that Hatten was afforded a full panoply of

procedural protections, and conclude that there is sufficient evidence to support each of the prison's five separate findings of misconduct, it is recommended that this petition be denied.

## II. **Discussion**

### A. **The Exhaustion Doctrine –Standard of Review**

At the outset in examining this petition we must consider whether Hatten's habeas petition claims have been fully exhausted. Although 28 U.S.C. § 2241 contains no express exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998); see also, Callwood v. Enos, 230 F.3d 627, 634 (3d Cir.2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir.1981). These exhaustion rules serve an important and salutary purpose. The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir.1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir.1988).

With respect to unexhausted habeas claims, it is well settled that: "Courts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals . . . .' " Ross v. Martinez, No. 09-1770, 2009 WL 4573686, 3 (M.D.Pa. Dec. 1, 2009). Quite the contrary, rigorously applying these exhaustion requirements, court have consistently rejected habeas petitions challenging prison disciplinary decisions where the inmate-petitioners have failed to fully exhaust their administrative remedies. See, e.g.,Johnson v. Williamson, 350 F. App'x 786 (3d Cir. 2009); Pinet v. Holt, 316 F. App'x 169 (3d Cir. 2009); Moscato v. Federal Bureau of Prisons, 98 F.3d. 757 (3d Cir. 1996). As this court has previously explained when dismissing a federal prisoner's habeas petition for failure to exhaust administrative remedies:

> In order for a federal prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. § 542. See 28 C.F.R. § 542.10, et seq.; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D.Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. 28 C.F.R. § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. 28 C.F.R. §§ 542.15(a), 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. See Sharpe v. Costello, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

Miceli v. Martinez, No. 08-1380, 2008 WL 4279887, at *2 (M.D.Pa. Sept. 15, 2008)

Thus, where an inmate has not exhausted his available administrative relief, and has not shown that the failure to pursue administrative relief should be excused, this court should, as a threshold matter, dismiss the petition for failure to exhaust administrative remedies, without prejudice to the filing of a new § 2241 petition after the petitioner fully exhausts appropriate administrative relief. See also, Lindsay v. Williamson, 271 F. App'x 158, 160 (3d Cir. 2008);Craig v. Zickefoose, No. 09-6513, 2010 WL 234908 (D.N.J. Jan. 15, 2010); Shoup v. Schultz, No. 09-0585, 2009 WL 1544664, at *4 (D.N.J. June 2, 2009); Breazeale v. Shultz, No. 09-2118, 2009 WL 1438236 (D.N.J. May 19, 2009).

## B. Procedural and Substantive Standards for DHO Hearings

In this habeas petition Hatten launches a two-fold constitutional assault upon this prison disciplinary decision, challenging that disciplinary process generally on procedural due process grounds, and asserting that the decision is substantively flawed since there is insufficient evidence to support a finding of misconduct on his part. Hatten faces an exacting burden of proof in advancing these two constitutional claims.

First, with respect to his procedural due process concerns, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary

charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often invited courts to set aside disciplinary hearing results based upon general assertions of staff bias. et, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F. App'x. 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F. App'x 488 (3d Cir. 2007).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R.

§541.10 et seq. These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in Wolff. See Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. §541.14. After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing. 28 C.F.R. §541.15. The inmate, in turn, is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the Discipline Hearing Officer (DHO) for further hearing. 28 C.F.R. §541.15(f). The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. §541.18. The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.17.

Throughout this hearing process the inmate is provided with a series of procedural rights. For example, the inmate is entitled to notice of the alleged infraction. Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. §541.17(a). The inmate is also entitled to assistance at DHO hearings. In particular, the Warden must provide the inmate with a full time staff member to represent him at the DHO hearing. 28 C.F.R. §541.17(b).

The inmate also has a series of procedural rights at the hearing itself. Thus, at the DHO hearing, the inmate is entitled to make a statement and present documentary

evidence.  The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents.  While the DHO need not call repetitive witnesses or adverse witnesses, 28 C.F.R. §541.17(c), the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available.  The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized.  28 C.F.R. §541.17(d).

In addition, the regulations prescribe procedural standards for DHO decision-making.  Thus, the regulations require that the DHO must consider all evidence presented at the hearing.  The decision of the DHO must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. §541.17(f). Finally, the DHO must prepare a record of the proceedings.  This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO.  The record must include a brief statement of the reasons for the sanction imposed.  A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing.  28 C.F.R. §541.17(g).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison disciplinary setting.  See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d

Cir. 2007)(same); <u>Reynolds v. Williamson</u>, 197 F. App'x 196 (3d Cir. 2006)(same); <u>Levi v. Holt</u>, 193 F. App'x 172 (3d Cir. 2006)(same); <u>Sinde v. Gerlinski</u>, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

In his habeas petition, Hatten also attacks the substance of the DHO decision, arguing that there was insufficient evidence to support a finding of misconduct on his part. Like his procedural due process challenge, this substantive attack on the sufficiency of the evidence in this disciplinary hearing must meet a demanding legal standard to succeed. A prison disciplinary determination comports with due process if it is based on "some evidence." <u>See</u> <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. <u>See</u> <u>id.</u> at 455; <u>Thompson v. Owens</u>, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. <u>Hill</u>, 472 U.S. at 457; <u>Elkin v. Fauver</u>, 969 F.2d 48 (3d Cir.1992); <u>Thompson v. Owens</u>, 889 F.2d 500 (3d Cir. 1989); <u>Franco v. Kelly</u>, 854 F.2d 584, 588 (2d Cir. 1988); <u>Freeman v. Rideout</u>, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [DHO]." <u>Freeman</u>, 808 F.2d at

954.  As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO.  Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d 501; Freeman, 826 F.2d at 954.  In practice, courts have rarely condemned correctional disciplinary decisions as being wholly lacking in evidentiary support, and have frequently concluded that disciplinary findings are supported by the requisite degree of proof .  See e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

## C.     **Application of the Legal benchmarks Compels Denial of Hatten's Petition**

In this case, application of these legal benchmarks to the various complaints Hatten makes regarding the five separate disciplinary proceedings conducted against

him reveals that, in every instance, Hatten's claims fail as a matter of law. These five disciplinary proceedings are discussed separately below:

### 1. Incident Report No. 1823778

First, the petitioner argued in his habeas petition that the DHO deprived him of the required evidentiary standard due process in the hearing related to Incident Report No. 1823778. (Doc. 1-5, p. 5.) The petitioner further argued that his due process rights were violated when he did not receive a written incident report within twenty-four hours of the staff's awareness of the petitioner's involvement in the incident. Id.

According to this Incident Report, on January 20, 2009, the Unit Disciplinary Committee ("UDC") at USP Florence attempted to conduct a hearing on a previous incident involving the petitioner. (Doc. 13, p. 96.) The UDC members asked the petitioner if he received a copy of the incident report and if he was informed of his rights, the petitioner replied that he did not. Id. The petitioner was asked to sit in a chair that had been provided for him. Id. The petitioner refused. Id. The petitioner headed for the door and told the UDC to forward the report to the DHO while the staff attempted to explain the sanctions he could face. Id. The petitioner made comments and kicked the computer monitor off the desk barely missing one of the UDC members. Id. The UDC issued an incident report the same day charging him with Code 224A, Attempted Assault, Code 238, Destroying Government Property Over $100 and Code 207, Refusing an Order. Id. The petitioner received a copy of the report on February 22, 2009. Id.

11

On February 25, 2009, the UDC conducted the hearing and referred the charge to the DHO for a hearing. Id. The petitioner received the notice of the disciplinary hearing before the DHO and advising him of his rights which was signed and acknowledged by the petitioner. Id. The petitioner signed the form requesting a staff member be appointed to represent him and that three staff members to serve as witnesses at the DHO hearing. Id. The petitioner agreed to lesser charges. Id.

The DHO concluded that the petitioner was guilty of BOP Offense Code 329, Destroying Property Less Than $100, and Offense Code 307, Refusing to Obey an Order. (Doc. 13, p. 82). The petitioner appealed the decision to the Regional Office on the grounds that he was not provided notice of the charge within 24 hours of the staff becoming aware of the incident, that he was not provided with a competency hearing as requested and the DHO denied his rights when a due process violation occurred. Id., p. 84.

In response to the appeal, a procedural error was discovered and the Regional Office returned the incident report to the DHO for reconsideration. Id. The Regional Office instructed the DHO to conduct a competency evaluation and to obtain testimony from the staff witnesses requested by the petitioner or to justify why their testimony was not permitted. Id.

On May 20, 2010, after the information was obtained from the Regional Office, the DHO conducted a re-hearing at the Federal Correctional Institute in Oakdale, Louisiana ("FCC Oakdale") where the petitioner was confined. Id. pp. 80-83. The petitioner appeared with a staff representative and was advised of his rights. Id. at p.

80. The petitioner denied the charges. Id. The staff witnesses requested by the petitioner provided written statements because they could not appear in person. Id. at p. 81. A photograph of the damaged computer monitor and a competency evaluation from psychologist Dr. B. Moorehead was also presented. Id.

The DHO reviewed the evidence and concluded that the reporting officer's statement which was provided which stated that the petitioner was ordered several times to sit in the chair and the petitioner refused and moved toward the door was credible. Id. at p. 82. The reviewing officer further noted that the petitioner made several comments and kicked the computer monitor off the desk barely missing the reporting officer. Id. The prior DHO expunged the charge of assault for insufficient evidence of the petitioner's intent to assault the reporting officer when he kicked the monitor. Id. The DHO upheld the findings of the previous DHO and found the petitioner had committed the prohibited act of Refusing an Order, Code 307 and Destroying Government Property Less than $100, Code 329. Id. The DHO further upheld the prior sanctions in a written decision delivered to the petitioner on December 2, 2010. Id.

The record establishes that the petitioner was afforded the requisite due process protections and that the DHO relied upon and cited ample evidence of his guilt. In Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974), the Supreme Court identified the minimum procedural due process rights to be afforded a prisoner accused of misconduct which may result in loss of good conduct time. These include: (1) the right to appear before an impartial decision making body; (2) twenty-four hour

advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67; Redding v. Holt, 2007 WL 2155543, *6 (M.D. Pa. 2007). The right to have the opportunity to bring witnesses and evidence before the hearing is limited to situations where allowing this will not be "unduly hazardous to institutional safety or correctional goals." Id. at 566. The court recognizes the importance of protecting prison officials' discretion to keep hearings reasonable by disallowing witnesses or limiting inmate's access to collect statements or compile other evidence. Id.

In the present case, it is clear that the petitioner was afforded all the rights set forth in Wolff and the DHO's findings were supported by the requisite "some evidence" standard. See Superintendent v. Hill, 472 U.S. 455, 456-457 (1985) (requiring a DHO's decision to be supported by "some evidence" on the record); Young v. Kann, 926 F.2d 1396, 1402-1403 (3d Cir. 1991) (applying the Hill standard to a federal prisoner due process challenges to prison disciplinary proceedings).

Here, the petitioner appealed to the Regional Office and received a re-hearing on the charges on May 20, 2010. (Doc. 13, p. 80.) The petitioner received written notice of the charges against him more than 24 hours before his disciplinary hearing. Id. The petitioner appeared before an impartial hearing body. Id. The petitioner

requested the psychological evaluation be taken out of the records because he did not speak with the psychologist. Id. The petitioner was afforded the opportunity to have a staff representative at the hearing but he chose not to do so. Id. The petitioner was provided with a written statement of the evidence relied upon in reaching the decision including the photograph of the computer monitor damaged in the incident. Id. The DHO clearly articulated each source of evidence relied upon in making the decision. Id. The petitioner was advised of his right to appeal and he received a copy of the DHO report. Id. There was more than "some evidence" which supports the DHO's conclusion. Thus, there is no indication that the petitioner's due process rights were violated.

The Petitioner alleged a due process violation relating to receiving a written incident report within twenty-four hours of the time the staff became aware of the incident. (Doc. 1, Ex. 5, p. 1.) The petitioner further alleged that the Regional Director agreed with the petitioner that a procedural error occurred and returned the report to the institution for reconsideration. Id. However, the record reveals that Hatten has had ample notice of this alleged infraction. Moreover, the letter from the Regional Director which was sent to the DHO simply indicated that the DHO was to conduct a re-hearing because the petitioner requested a competency hearing by a psychologist and the petitioner requested witnesses which were not provided. (Doc. 13, p.84.) The Regional Director did specify a violation concerning the petitioner not receiving a written incident report within twenty-four hours. Id. The DHO's report clearly indicates that the witness statements and competency evaluation were

reviewed in the re-hearing and considered by the DHO. (Id., p. 82). In light of the foregoing, the petitioner received his procedural due process rights and his finding of guilt was properly supported by more than "some evidence." Thus, it is recommended that the claim raised regarding Incident Report No. 1823778 be dismissed.

### 2. Incident Report No. 2177122

The petitioner then argued in his petition that the DHO deprived him of the required due process in the hearing related to Incident Report No. 2177122 which was conducted outside of the presence of the petitioner. (Doc. 1-4, p. 1.) The petitioner further argued that his due process rights were violated when he did not receive "investigative reports, videos, etc., containing exculpatory witness statements." Id.

According to this particular Incident Report, on June 22, 2011, a Special Investigative Agent ("SIA") reviewed an administrative remedy appeal submitted by the petitioner in which the petitioner wrote "I will not allow B. Tanner SOS to continue to violate me and thus the first opportunity arises, I will not hesitate to take him out." (Doc. 12, p. 39.) As a result, the petitioner was issued an incident report the same day charging him with Code 203, Threatening Another with Bodily Harm. Id. The petitioner received the incident report the same day. Id. The UDC conducted a hearing and referred the charge to the DHO for a hearing. Id.

The petitioner was advised of his rights by the DHO. (Doc. 12, p. 34.) The petitioner refused to sign the form to acknowledge that he was advised of his rights.

16

Id. The petitioner requested the assistance of a staff representative seven witnesses and video camera surveillance. Id. The DHO then conducted a hearing on this infraction. Id., pp. 34-38. A staff representative appeared on the petitioner's behalf. Id. The staff representative informed the DHO that the petitioner did not make any special requests. Id. The petitioner fired the staff representative after the staff representative attempted to meet with the petitioner. Id. The petitioner argued that it was his procedural due process right to meet in private, however, the staff representative informed the petitioner that it was not his right. Id. The petitioner demanded a new staff representative at the hearing. Id. The petitioner was then removed from the hearing room for elevating his voice and refusing to participate in the hearing process and the hearing was conducted in his absence. Id.

Prior to his removal the petitioner requested seven witnesses with the expectation that they would testify to the fact that they handled the petitioner's complaints regarding Tanner, the staff victim of the alleged threat. Id. The DHO, however, did not call the witnesses because the testimony was not deemed relevant to whether the petitioner committed the alleged act of writing a threat to kill staff. Id. The video testimony likewise was not reviewed by the DHO as it was also not material to the charges, since the charges were based on a handwritten document prepared by the petitioner. Id.

The DHO found the petitioner had committed Code 203, Conduct which Disrupts, most Threatening, and sanctioned him to twenty-seven (27) days loss of good conduct time, thirty (30) days disciplinary segregation, one-hundred twenty

days loss of commissary, telephone and visiting privileges and the impoundment of all property except legal and religious materials for one hundred twenty (120) days. Id. The DHO issued a written decision on September 28, 2011, which was delivered to the petitioner on September 29, 2011. Id.

The petitioner filed administrative remedy 661268-RI which referred to Incident Report No. 2177122 with the BOP's Regional Office on October 14, 2011. (Doc. 11, p. 9.) The appeal was rejected on October 20, 2011, because it referenced more than one DHO appeal. Id. The petitioner was given the opportunity to re-file within ten (10) days. Id., p. 2. On January 25, 2012, the petitioner again attempted to file the appeal with the Regional Office. Id., p. 13. The appeal was rejected on February 9, 2012, because it referenced a staff complaint which needed to be filed with the Warden. Id. The petitioner was given the opportunity to re-file within ten (10) days. Id., p. 2. On February 17, 2012, the petitioner again attempted to file appeal with the Regional Office. Id., p. 15. The appeal was rejected on March 19, 2012, because again it referenced another issue which needed to be filed separately. Id. The petitioner was given the opportunity to re-file within ten (10) days. Id., p. 2. The petitioner did not file any other administrative remedies regarding Incident Report No. 2177122. Id.

### 3. Incident Report No. 2186134

The petitioner further argued in his petition that the DHO deprived him of the required due process in the hearing related to Incident Report No. 2186134. (Doc. 1-3, p. 2.) The petitioner contended that his due process rights were violated when he

18

did not receive "investigative reports, videos, etc., containing exculpatory witness statements." Id. According to the Incident Report, on May 1, 2011, an SIA reviewed a Regional Administrative Remedy Appeal submitted by the petitioner in which the petitioner wrote "It should be noted. That if the opportunity arise. I'm left with no other recourse but to 'kill' Brandon Tanner, S.O.S." (Doc. 12, p. 51). As a result of this statement, the petitioner was issued an incident report the same day charging him with Code 203, Threatening Another with Bodily Harm. Id. The petitioner received the incident report the same day. Id.

The UDC conducted a hearing and referred the charge to the DHO for a hearing. Id. The petitioner was advised of his rights by the DHO. (Doc. 12, p. 47.) The petition refused to sign the form to acknowledge that he was advised of his rights. Id. The petitioner declined the assistance of a staff representative and witnesses. Id.

The DHO then conducted a hearing. Id., pp. 47-50. At this hearing, staff representative appeared on the petitioner's behalf and the petitioner was informed of his rights. Id. The staff representative informed the DHO that the petitioner fired the staff representative after the staff representative attempted to meet with the petitioner. Id. The petitioner argued that it was his procedural due process right to meet in private, however, the staff representative refused to meet him in person. Id. The petitioner was removed from the hearing room for elevating his voice and refusing to participate in the hearing process. Id. The hearing was conducted in his absence. Id. The petitioner waived his right to witnesses. Id. The DHO reviewed the

petitioner's Regional Administrative Remedy Appeal as documentary evidence, and found the petitioner had committed Code 203, Conduct which Disrupts, most Threatening. Id. The petitioner was sanctioned to twenty-seven (27) days loss of good conduct time, thirty (30) days disciplinary segregation, one hundred twenty (120) days loss of commissary, telephone and visiting privileges and the impoundment of all property except legal and religious materials for one hundred twenty (120) days. Id. The DHO issued a written decision on September 28, 2011, which was delivered to the petitioner on September 29, 2011. Id.

The petitioner filed administrative remedy 661299-RI which referred to Incident Report No. 2186134 with the BOP's Regional Office on October 17, 2011. (Doc. 11, p. 24.) The appeal was rejected on October 20, 2011, because it referenced more than one DHO appeal and a staff complaint which must be filed with the Warden. Id. The petitioner was given the opportunity to re-file within ten (10) days. Id., p. 2. On November 9, 2011, the petitioner attempted to file the appeal with the Regional Office. (Id., p.26). The appeal was rejected on November 10, 2011, because it referenced a staff complaint which needed to be filed with the Warden. Id. The petitioner was given the opportunity to re-file within ten (10) days and instructions to only address the DHO appeal on the BP-10. Id. On December 19, 2011, the petitioner attempted to file the appeal with the Central Office. (Doc. 12, p. 32). The appeal was rejected on January 9, 2012, with instructions to follow the instructions of the Regional Office and resubmit to the Regional Office for review. Id.

On January 25, 2012, the petitioner again attempted to file the appeal with the Regional Office. (Id., p. 28). The appeal was rejected on February 9, 2012 because it referenced a staff complaint which needed to be filed with the Warden. Id. The petitioner was given the opportunity to re-file within ten (10) days and instructions to only address the DHO appeal on the BP-10. Id., p. 2. On February 17, 2012, the petitioner again attempted to file the appeal with the Regional Office. (Doc. 11, p.30.) The appeal was rejected on March 19, 2012, because it referenced a staff complaint which needed to be filed with the Warden and the petitioner was given the opportunity to re-file within ten (10) days. Id. The petitioner was informed that he had been instructed how to separate issues. Id. The petitioner did not file any other administrative remedies regarding Incident Report No. 2186134. Id.

In this case, Hatten's claims relating to these two disciplinary citations, citations based upon his own written threats against the life of another, fail. At the outset, although there is no statutory exhaustion requirement attached to habeas petitions brought pursuant to 28 U.S.C. § 2241, a federal prisoner must exhaust his administrative remedies prior to filing a § 2241 petition. Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). This mandate "has developed through decisional law in applying principles of comity and federalism" to claims brought under § 2241. Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986). Exhaustion of administrative remedies is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2)

permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62.

In order to exhaust administrative remedies of a DHO claim, first, the inmate must submit a formal, written Administrative Remedy Request to the Regional Director within 20 days of the occurrence that is the underlying basis for such a request. 28 C.F.R. 542.14 (d)(2) and 28 C.F.R. 542.15(a). If accepted, the Regional Director's response is due within 30 days. 28 C.F.R. 542.18. Second, if the inmate believes that the BOP Regional Director's response is unsatisfactory, the inmate is entitled to appeal the decision to the General Counsel at the BOP Central Office within 30 days. 28 C.F.R. 542.15(a). "Appeal to the General Counsel is the final administrative appeal." Id. If accepted, the General Counsel's response is due within 40 calendar days. 28 C.F.R. 542.18. "If an inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

In this case, the respondent argued that the petitioner has procedurally defaulted on the exhaustion of his administrative remedies with respect to the claims raised regarding Incident Report No. 2177122 and 2186134 in his habeas petition. (Doc. 5.) The petitioner did not respond to the respondent's argument that the petitioner did not exhaust his administrative remedies and the petitioner has not shown any circumstance in which exhaustion is not required or should be excused. See Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998). Indeed, evidence in the

record indicates that although the petitioner attempted to exhaust his administrative remedies, he did not do so properly. Furthermore, the petitioner did not explain why he failed to follow the instructions in the filing of his administrative remedies. Therefore, it is recommended that claims raised regarding Incident Report No. 2177122 and 2186134 be dismissed for failure to exhaust his administrative remedies.

We also note that Hatten's substantive and procedural objections to these disciplinary proceedings are unavailing, since the record of these proceedings reveals ample evidence to support these disciplinary infractions which are based upon Hatten's own handwritten statement that ""It should be noted. That if the opportunity arise. I'm left with no other recourse but to 'kill' Brandon Tanner, S.O.S." Furthermore, the record of these hearings affirmatively demonstrates that Hatten's procedural due process rights were fully protected despite his repeated, recalcitrant behavior.

As for Hatten's complaints that he was not allowed to view allegedly exculpatory videotapes, exculpatory evidence is defined as "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the [government]." United States v. Starusko, 729 F.2d 256, 260 (3d Cir.1984), quoting Brady v. Maryland, 373 U.S. 83, 87 (1963). In a prison setting, where inmates are frequently subject to video surveillance, inmate requests relating to the examination of exculpatory evidence often entail requests, like the request made here, that disciplinary officials examine potentially exculpatory video evidence. In this setting cases have defined some

minimal due process requirements which must be met.  First, in the absence of a timely request by an inmate for the presentation of such evidence, there is no general affirmative obligation on the part of prison officials to ferret out this proof.  See, e.g., Piggie v. Cotton, 342 F.3ed 660 (7th Cir. 2003).  In addition, it is clear that due process is satisfied if prison officials, upon request by an inmate, inquire and determine that there is no relevant video evidence.  See, e.g., Pachtinger v. Grondolsky, 340 F. App'x 774 (3d Cir. 2009)(inmate informed no video existed). Similarly, the requirements of procedural due process are often met if, following an inmate request, prison officials examine existing video evidence *in camera* in making their determination regarding whether a prison infraction has occurred.  See, e.g., Scruggs v. Jordan, 485 F.3d 934 (7th Cir. 2007); Herrera v. Davis, 54 F.App'x 861 (7th Cir. 2002); Jones v. Sherrod, No. 07-673, 2010 WL 3880409 (S.D. Ill. Sept. 28, 2010)(Hearing officer may rely upon an accurate description of a video provided by another staff member).  Finally, disciplinary officials may also refuse to consider such evidence entirely, despite an inmate's request,  provided that they give, at some time, an adequate explanation of the reasons for refusing to consider the evidence.  See, e.g., Ponte v. Real, 471 U.S. 491, 497(1985).

However, in this setting prison disciplinary officials:

> "[M]ay not arbitrarily refuse to consider exculpatory evidence simply because other evidence in the record suggests guilt." Whitford v. Boglino, 63 F.3d 527, 536 (7th Cir.1995) (quoting Viens v. Daniels, 871 F.2d 1328, 1336 n. 2 (7th Cir.1989)). . . . [Therefore, while the prison] need not explain at the hearing why it denied an inmate's request for witnesses or potentially exculpatory evidence, the [prison] has the burden of proving [at some time] that its denial was not arbitrary or capricious.  See Ponte v. Real, 471 U.S. 491, 498-99 (1985).

24

Piggie v. McBride, 277 F.3d 922, 925 (7th Cir. 2002).

Here, prison officials denied Hatten's request for access to prison videos, but did so reasoning that the videos were not relevant to Hatten's alleged threats, which had been thoroughly documented in writing by the petitioner. This reasoning is persuasive and fully satisfied the requirements of due process in this setting since prison officials gave Hatten an adequate explanation of the reasons for refusing to consider the evidence. See, e.g., Ponte v. Real, 471 U.S. 491, 497(1985). Accordingly, this claim also fails.

### 4.    Incident Report No. 2186530

The petitioner next argued in his habeas petition that the DHO deprived him of the required due process in the hearing related to Incident Report No. 218650 which was conducted outside of the presence of the petitioner. (Doc. 1-1, p. 1.) The petitioner further argued that his due process rights were violated when he did not receive" investigative reports, videos, etc., containing exculpatory witness statements." Id.

According to the Incident Report, on July 16, 2011, a staff member was attempting to apply a hand restraint on the petitioner through the food slot in his cell door in order to take him for a shower. (Doc. 13, p. 64.) The petitioner grabbed the staff member's left hand and pulled the staff member through the slot. Id. As a result, the petitioner was issued an incident report the same day charging him with Code 224, Assaulting another person. Id. The petitioner received the incident report the same day. Id.

The UDC conducted a hearing and referred the charge to the DHO for a hearing. Id. The petitioner was advised of his rights by the DHO. Id. The petition refused to sign the form to acknowledge that he was advised of his rights. Id. The petitioner requested the assistance of a staff representative and the video camera surveillance of the incident. Id.

The DHO conducted a hearing on August 16, 2011. (Id., pp. 60-63.) A staff representative appeared on the petitioner's behalf. Id. The staff representative who appeared on the petitioner's behalf informed the DHO that the petitioner fired the staff representative after the staff representative attempted to meet with the petitioner. Id. The petitioner argued that it was his procedural due process right to meet in private, however, the staff representative refused to remove the petitioner from his cell to meet with him in private. Id. The petitioner was removed from the hearing room for elevating his voice and refusing to participate in the hearing process. Id. The hearing was conducted in his absence. Id.

The DHO reviewed the video footage of the incident recorded on the video camera surveillance system. Id., p. 61. The DHO noted that the reporting officer attempted to double-lock the petitioner's hand restraints through the food slot in cell door when the petitioner abruptly pulled his hands through the slot causing the officer's left hand to strike the outside of the cell door. Id., p. 62. The DHO noted that the petitioner is observed on the video abruptly pulling the officer's hands through the slot a second time causing the officer's entire body to be pulled toward the cell door and his arms to strike the outside of the cell door. Id. The DHO further

noted that the video footage contradicted the petitioner's statement to the UDC that it would clear him of the charge and instead corroborated the officer's statement. Id.

The DHO found the petitioner had committed Code 298, Conduct which Disrupts, most like Assault. Id. The petitioner was sanctioned to twenty-seven (27) days loss of good conduct time, thirty (30) days disciplinary segregation, one hundred eighty (180) days loss of commissary, telephone and visiting privileges and the impoundment of all property except legal and religious materials for one hundred twenty (120) days. Id. The DHO issued a written decision on September 29, 2011, which was delivered to the petitioner on the same day. Id.

It is clear in this instance that the petitioner was afforded all the rights set forth in Wolff because the DHO's findings were supported by "some evidence." See Superintendent v. Hill, 472 U.S. 455, 456-457 (1985) (requiring a DHO's decision to be supported by "some evidence" on the record); Young v. Kann, 926 F.2d 1396, 1402-1403 (3d Cir. 1991) (applying the Hill standard to federal prisoner due process challenges to prison disciplinary proceedings).

Here, the DHO determined that the officer's report of the incident and the video footage of the incident was more credible than the petitioner's statement. (Doc. 13, pp. 60-63.) In reaching this decision, the DHO relied upon the eyewitness report of the officer who indicated that the petitioner grabbed the officer's left hand and pulled him through the slot while he was attempting to apply a hand restraint to him in the shower. Id., p. 62. The DHO also relied upon the video footage which corroborated the officer's account of the incident and not the petitioner's statement,

"it will show that he did not pull the reporting officer into the wicket." Id. The DHO explained that he also based his findings on the fact that the petitioner declined to comment at the DHO hearing with regard to the prohibited acts and did not provide the DHO with any documentary evidence to review. Id. Similarly, the requirements of procedural due process were fully satisfied here since, following an inmate request, prison officials examine existing video evidence *in camera* in making their determination regarding whether a prison infraction has occurred, and Hatten was found guilty only after the video evidence confirmed his guilt. See, e.g., Scruggs v. Jordan, 485 F.3d 934 (7th Cir. 2007); Herrera v. Davis, 54 F.App'x 861 (7th Cir. 2002); Jones v. Sherrod, No. 07-673, 2010 WL 3880409 (S.D. Ill. Sept. 28, 2010)(Hearing officer may rely upon an accurate description of a video provided by another staff member). In light of the foregoing, the petitioner received his procedural due process rights and his finding of guilt was properly supported by more than "some evidence." Thus, it is recommended that the claim raised regarding Incident Report No. 2186530 be dismissed.

### 5. Incident Report No. 2189889

Finally, the petitioner argued that in his habeas petition that the DHO deprived him of the required due process in the hearing related to Incident Report No. 2189889 which was conducted outside of the presence of the petitioner. (Doc. 1-2, p. 1.) The petitioner further argued that his due process rights were violated when he did not receive "investigative reports, videos, etc., containing exculpatory witness statements." Id.

According to the Incident Report, on July 25, 2011, a staff member ordered the petitioner to cuff up and return to his cell. (Doc. 13, p. 74.) The petitioner refused the staff member's order and threatened harm to the other inmate assigned to the petitioner's cell. Id. The petitioner threatened harm to any inmate he was placed with. Id. As a result, the petitioner was issued an incident report the same day charging him with Code 203, Threatening Another with Bodily Harm, and Code 307, Refusing to Obey an Order. Id. The petitioner received the incident report the same day. Id.

The UDC conducted a hearing and referred the charge to the DHO for a hearing. Id. The petitioner was advised of his rights by the DHO. (Id., pp. 76-77.) The petitioner refused to sign the form to acknowledge that he was advised of his rights. Id. The petitioner requested the assistance of a staff representative and the video camera surveillance of the incident. Id.

The DHO conducted a hearing on August 16, 2011. (Id., pp. 70-73). A staff representative appeared on the petitioner's behalf. Id. The staff representative informed the DHO that the petitioner fired the staff representative after the staff representative attempted to meet with the petitioner. Id. The petitioner argued that it was his procedural due process right to meet in private, however, the staff representative refused to remove the petitioner from his cell to talk to him in private. Id. The petitioner fired the staff representative. Id. The petitioner was removed from the hearing room for elevating his voice and refusing to participate in the hearing process. Id. The hearing was conducted in his absence. Id

The DHO reviewed the video footage of the incident recorded on the video camera surveillance system. Id., p. 71. The DHO noted that the reporting officer was present at the scene of the incident and remained outside of the petitioner's cell door for approximately two minutes during the incident. Id., p. 72. The DHO noted that the video footage contradicted the petitioner's statement to the UDC that it would clear him of the charge and instead corroborated the officer's statement. Id.

The DHO found the petitioner had committed Code 203, Conduct which Disrupts, most like Threatening. Id. The petitioner was sanctioned to twenty-seven (27) days loss of good conduct time, thirty (30) days disciplinary segregation, one hundred twenty (120) days loss of commissary, telephone and visiting privileges and the impoundment of all property except legal and religious materials for one hundred twenty (120) days. Id. The DHO issued a written decision on September 29, 2011, which was delivered to the petitioner on the same day. Id.

Once again, it is clear that the petitioner was afforded all the rights set forth in Wolff because the DHO's findings were supported by "some evidence." See Superintendent v. Hill, 472 U.S. 455, 456-457 (1985) (requiring a DHO's decision to be supported by "some evidence" on the record); Young v. Kann, 926 F.2d 1396, 1402-1403 (3d Cir. 1991) (applying the Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). Here, the DHO determined that the officer's report of the incident and the video footage of the incident was more credible than the petitioner's statement. (Doc. 13, pp. 70-73.) In reaching this decision, the DHO relied upon the report of the officer who indicated that he ordered the petitioner

30

o submit to restraints and return to his cell, but the petitioner refused and threatened harm to the other inmate in his cell and any other inmate he was placed with. Id., p. 72. The DHO also relied upon the video footage which corroborated the officer's account of the incident and not the petitioner's statement that it would show the officer was never at his cell door. Id. The video confirmed the reporting officer was present at the scene of the incident and remained outside the petitioner's door for approximately two minutes. Id. The DHO explained that he also based his findings on the fact that the petitioner declined to comment at the DHO hearing with regard to the prohibited acts and did not provide the DHO with any documentary evidence to review. Id.

In light of the foregoing, the petitioner received his procedural due process rights and his finding of guilt was properly supported by more than "some evidence." Thus, it is recommended that the claim raised regarding Incident Report No. 2189889 be dismissed.

## III. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written

objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 7th day of February 2013.

S/Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge